LAHAY *v.* NELSON.

1. AUTOMOBILES—LIABILITY FOR PERSONAL INJURIES—OWNERSHIP.

Liability of defendant automobile dealer to plaintiff administratrix, whose decedent was fatally injured by car of which dealer was claimed to be owner, and driven by one to whom it had been sold under agreement containing title-retaining clause by dealer's salesmen and clerk as part of series of transactions by means of which salesmen sold clerk's car to party previously owning car which injured plaintiff, depends upon whether dealer ever was owner (1 Comp. Laws 1929, § 4648).

2. SAME—OWNERSHIP—CERTIFICATE OF TITLE—EVIDENCE.

In action by plaintiff administratrix whose decedent was injured in automobile collision with car in certificate of title to which assignment was shown as from party to whom defendant dealer's clerk had traded her own car direct to defendant driver without showing clerk or dealer as owner of car in question, evidence *held,* insufficient to show defendant dealer ever was owner, no certificate of title ever having been delivered to him (1 Comp. Laws 1929, §§ 4648, 4660, as amended by Act No. 65, Pub. Acts 1931).

Appeal from Menominee; Bell (Frank A.), J. Submitted October 18, 1935. (Docket No. 122, Calendar No. 38,584.) Decided November 12, 1935.

Case by Jennie LaHay, administratrix of the estate of Harvey LaHay, deceased, against Herbert Norton, doing business as the Northern Motor Company and as Cloverland Bond Company, and Joe Nelson for injuries resulting in death of plaintiff's decedent due to negligence of defendants. Default judgment against defendant Nelson. Verdict for plaintiff. Judgment *non obstante veredicto* for de-

fendant Norton. Plaintiff appeals. Defendant Norton cross-appeals. Affirmed.

*Derham & Derham,* for plaintiff.

*Glenn W. Jackson (James A. Markle,* of counsel), for defendant Norton.

FEAD, J. This is review of judgment for defendant Norton, entered *non obstante veredicto.*

Norton is a retail dealer in Ford automobiles and operates under the assumed name of Northern Motor Company to sell cars and Cloverland Bond Company to finance them.

The action is for personal injuries in a collision of automobiles, driven by decedent and defendant Nelson on June 2, 1934. The principal question is whether defendant Norton was owner of the car driven by Nelson.

On March 19, 1934, one Slade went to the Norton salesroom to trade in a Chevrolet car. Finding no satisfactory automobile in stock he was told by the salesmen that Clara M. Roth, Norton's bookkeeper, had a Ford car for exchange. Negotiations were conducted by Slade, Miss Roth and the salesmen, and an exchange was made with sales tax charged against Slade. There is no dispute that Miss Roth owned the Ford car and Slade knew he was trading with her. However, Slade testified that Norton's salesmen agreed to handle the trade as a company affair and to give a 30-day guarantee and service on the Ford car.

On May 12th, Nelson went to Norton's salesroom to trade a Whippet coupe. A salesman showed him the Slade Chevrolet, a trade was made after negotiations by Nelson, Norton's salesman and Miss Roth, and Nelson took the car with him. Nelson

stated that Miss Roth was consulted about the deal but most of it was conducted by the salesmen and he was not told the Chevrolet was Miss Roth's car.

The difficulty arises from the fact that Miss Roth, in handling the papers of the transfer of the cars, departed from the lawful and proper course and indulged in irregular practice.

In the Slade exchange she had Slade execute the transfer form on his certificate of title in blank, *i.e.*, without filling in the name of the transferee and statement of lien. She notarized his signature as of May 5th. Instead of inserting her name as transferee and sending the certificate of title to the secretary of State for a new certificate within 10 days, 1 Comp. Laws 1929, § 4660, as amended by Act No. 65, Pub. Acts 1931, Miss Roth kept the Slade certificate in her possession and, after the trade was made with Nelson, inserted his name in the transfer blank as transferee. She also wrote in both the transferor and transferee parts of the certificate a statement of chattel mortgage lien for $96, dated May 12, 1934, in favor of Cloverland Bond Company. This was the balance on the Nelson trade. She notarized the signature of Nelson to the transferee part of the blank as of June 2d instead of May 12th.

Instead of taking a note and security in her own name from Slade for the balance of $296, owing to her on the trade, she used a Cloverland Bond Company note and chattel mortgage form, so that the note and mortgage which Slade executed ran to the Cloverland Bond Company as payee. The instrument is expressly declared to be a chattel mortgage although it contains the clause:

"The express conditions of the sale and purchase of said property are such that the title and ownership do not pass from the said payee until this note,

and all repair, etc., charges above mentioned are paid in full.''

The next day Miss Roth herself indorsed the Slade contract in the name of Cloverland Bond Company to the First National Bank and put it in the bank for collection for her personal account.

In the Nelson deal she used the note and chattel mortgage form of the Northern Motor Company, substantially identical with the Cloverland Bond Company form. Assignment of the instrument was executed from Northern Motor Company to Clara M. Roth, and the paper filed for record in two days. In connection with the Nelson trade Miss Roth also drafted an order for $60, signed by Nelson and payable to the Northern Motor Company, and on May 15th a like order for $50. Her explanation is that she used her employer's name because she thought the debtors would be more likely to pay a business concern than a woman.

As the certificate of title blanks were completed, they show transfer directly from Slade to Nelson, with lien of $96. Miss Roth claims to have sent the instrument to the secretary of State for new certificate to Nelson on June 2d. It was received by the secretary of State on June 6th and certificate to Nelson issued June 8th.

Slade made several payments to the bank on his note and mortgage. In the notices sent to him by the bank it recited that his note was given to the Cloverland Bond Company.

There was considerable testimony from which it might be argued that Norton would be estopped to deny ownership of the Chevrolet car if the controversy were between him and Slade or Nelson. But plaintiff's decedent was not a party to the car exchange transactions. Norton's liability to plaintiff,

if any, arises from statute, 1 Comp. Laws 1929, § 4648, and rests upon whether he was owner of the car and it was driven with his consent. It is the fact of ownership which fixes his liability. Further testimony needs consideration.

It was not shown that Norton ever claimed to own the Chevrolet car. No sale by Miss Roth to him was found nor consideration passing from him to her during the time of the transaction from which a sale to him might be inferred.

Norton kept voluminous books and records showing his car transactions in detail. None of them indicated ownership by him of the Chevrolet car. In fact they contain no reference to the transaction except in two respects. They show a charge to Miss Roth for repair of the Chevrolet on April 2d, and $2 charged to her June 2d on account of the Slade-Nelson contract when she sent the company check to the secretary of State to cover the certificate of title of the Chevrolet and also other cars.

Plaintiff contends the books were not admissible in evidence to show ownership. Aside from the books, there were other facts which conclusively settle the question.

It was shown that Miss Roth used her employer's financial forms without his authority or knowledge. After the trade with Slade she used the Chevrolet car and her dominion over it was complete except in the respect that she apparently left it on the salesroom floor for sale or trade.

March 23d, she had her car insurance policy indorsed to cover the Chevrolet. She so carried it until April 18th, when she bought a new Ford from Norton, paid him cash for it and had the policy transferred to the Ford. On May 18th, after the sale to Nelson, she took out a new insurance policy cover-

ing the Chevrolet, running to Nelson but containing a loss payable clause to herself.

The Slade contract was handled as Miss Roth's personal property. When she put it in the bank for collection it was deposited and accepted for her personal account. On April 17th the bank loaned her $200, with the Slade contract as security. Payments, made by Slade both before and after the collision of June 2d, were indorsed by the bank on Miss Roth's personal obligation.

The undisputed evidence is that, viewed as a common-law transaction, the Chevrolet car belonged to Miss Roth, subject to the sale to Nelson, and the evidence does not support plaintiff's claim that she neglected to properly transfer the title certificate because Norton, a dealer, became the owner.

Counsel discuss quite fully the regularity of the transfer of certificate of title as to Slade, Miss Roth, Nelson and Norton, and its effect upon ownership.

It is not necessary to investigate this matter in detail because, if the certificate was insufficiently assigned, title remained in Slade; and if the assignment was sufficient, title was in Miss Roth or Nelson at the time of the accident. *Kruse* v. *Carey,* 259 Mich. 157. The certificate not having been delivered to Norton, he was not the owner. *Kimber* v. *Eding,* 262 Mich. 670.

Affirmed, with costs.

POTTER, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred. NELSON SHARPE, J., did not sit.